UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| *ex rel.* BEN R. STOKES, ) | Civil Action No. 11-1082 (ESH) |
| Relator, ) | |
| ) | FILED UNDER SEAL PURSUANT |
| v. ) | TO 31 U.S.C. §§ 3729 *et. seq.* |
| BOSTON SCIENTIFIC, et al., ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Relator Ben R. Stokes filed this action on June 14, 2011, under to the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"). Stokes alleges that defendants Boston Scientific, St. Jude Medical, Inc., and Medtronic, Inc., the "leading pacemaker manufacturers" in the United States, design and program pacemakers so as to cause the premature depletion of their batteries, thus "maximizing the number of procedures to implant and replace" the batteries in Medicare patients and "causing substantial expense to the Medicare Program." (Complaint, June 14, 2011 [Dkt. No. 1] ¶¶ 2–4.) Stokes presently serves as the owner and president of Heartland Partners, which is in the "hospital-based heart and vascular business." (Declaration of Ben R. Stokes, Dec. 21, 2011 [Dkt. No. 5-2] ("Stokes Decl.") ¶¶ 6–7.) From 2004 to 2009, he was the Senior Manager of Healthcare Economics for the Cardiac Rhythm Disease Management division at defendant Medtronic. (*Id.* ¶ 1.)

Pursuant to the *qui tam* provisions of the FCA, Stokes filed his complaint under seal so the United States could investigate his allegations. *See* 31 U.S.C. § 3730(b). After the

1

government completed its investigation, it elected not to intervene. (Notice of Election to Decline Intervention by United States of America, December 12, 2011 [Dkt. No. 4] ("Pl.'s Notice").) Pending before the Court are Stokes's Motion for Permission to File Redacted Complaint, Motion to Dismiss the Complaint Without Prejudice, and Motion to Continue Seal Except as to Redacted Complaint, Dec. 21, 2011 [Dkt. No. 5] ("Relator's Mot."); the United States's Response to Relator's Motion for Permission to File and Unseal Redacted Complaint, Dec. 22, 2011 [Dkt. No. 6] ("Pl.'s Response"); and Stokes's reply, Jan. 4, 2012 [Dkt. No. 7] ("Relator's Reply"). For the reasons stated, the Court grants in part and denies in part Stokes's Motion.

## I. DISMISSAL

Because the United States has consented to the dismissal of this action without prejudice, the Court will grant Stokes's motion in this regard. *See* 31 U.S.C. § 3730(b)(1) (providing that a *qui tam* action under the FCA may only be dismissed if the government so consents).

## II. SEALING

Stokes further requests leave to file an amended complaint which redacts his name and information that might be used to identify him,[1] and that the Court order sealed, for an indefinite period of time, all filings in this case except for the amended, redacted complaint and redacted versions of Plaintiff's Notice and this Court's order with regard to Stoke's Motion. (*See* Relator's Reply at 2–3.) Stokes alleges that his identity needs to be protected so that he can continue his investigation in the hope of convincing the United States to intervene in the future (*see* Stokes Decl. ¶¶ 20–21), and because, "[i]f [his] identity is publicly disclosed *at this time*, [he] fully believe[s] that [he] will experience significant retaliation within the industry" in that

---

[1] Specifically, Stokes proposes to "substitute John Doe for [his] name throughout the [c]omplaint and . . . redact [p]aragraphs 1, 4, 40, 41, and 59–70." (Relator's Mot. at 8 n.4.)

his "heart and vascular consulting business will sustain significant and irreparable economic damages in addition to the significant social stigma of being a whistleblower within an industry." (*Id.* ¶ 22 (emphasis added).)  The United States objects to Stokes's request.  (*See* Pl.'s Response at 4 ("Because this case does not appear to present the type of extraordinary circumstances that courts have found to warrant an indefinite seal . . ., the United States respectfully reiterates its request that the Court lift the seal for the Complaint, [Pl.'s Notice], and [Relator's Mot.].").)

In the typical *qui tam* action, once the government has decided whether to intervene, the relator's complaint is unsealed.  *See ACLU v. Holder*, --- F.3d ----, ----, No. 09-2086, 2011 WL 1108252, at *12 (4th Cir. Mar. 28, 2011) ("We agree that 'sunlight' and 'openness' are important values that further the functioning of this republic and note that in every FCA case, the *qui tam* complaint will be unsealed."); *United States ex rel. Coughlin v. IBM Corp.*, 992 F. Supp. 137, 140 (S.D.N.Y. 1998) (the FCA "envisions the lifting of the seal as to certain documents, particularly the relator's complaint"); c*f.* 31 U.S.C. § 3730(b)(2) ("The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."); *id.* § 3730(b)(3) ("The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed . . . .").  In order to grant Stokes's request, therefore, the Court would have to order a partial continuance of the seal provided by the FCA.

"In this Circuit, when evaluating whether to seal case pleadings, 'the starting point . . . is a strong presumption in favor of public access to judicial proceedings.'" *United States ex rel. Durham v. Prospect Waterproofing, Inc.*, --- F. Supp. 2d ----, ----, No. 10-cv-1946, 2011 WL 4793236, at *1 (D.D.C. Oct. 4, 2011) (some internal quotation marks omitted; alteration in the original) (quoting *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).  Indeed,

the *Durham* Court denied a relator's request to continue the seal in his *qui tam* action after it was dismissed without prejudice. *Id.* at *4; *see id.* at *1–4 (applying the six-factor test, which the D.C. Circuit articulated in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980), for when the presumption of public access may be overcome); *see also In Re Sealed Case*, No. 97-5001, 1997 WL 661779, at *1 (D.C. Cir. Oct. 8, 1997) (unpublished) (remanding and instructing the district court to apply the *Hubbard* factors in deciding whether to continue the seal on a *qui tam* action).

    This matter differs from *Durham* in one crucial respect. Whereas the relator in *Durham* "requested that the Court allow *the case* to remain under seal permanently," such that the public would have no access to his allegations, 2011 WL 4793236 at *1 (emphasis added), Stokes requests a limited seal for the purpose of concealing his identity.[2] The seal Stokes proposes would allow taxpayers, the "'real parties in interest' in FCA cases," *id.* at *2 (quoting *United States ex rel. Schweizer v. Oce, N.V.*, 577 F. Supp. 2d 169, 172 (D.D.C. 2008), to learn of the scheme he alleges by reading his amended, redacted complaint.

    Nonetheless, "the rationale behind sealing FCA cases is to allow the United States ample time to investigate the allegations, and the FCA does not contain any language that suggests the

---

[2] As such, instead of applying the *Hubbard* factors, this Court might assess Stokes's request "by applying the factors that courts in this Circuit have used to determine whether a plaintiff should be allowed to proceed anonymously." *Yaman v. United States Dep't of State*, 786 F. Supp. 2d 148, 152 (D.D.C. 2011); *see Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008) (listing the factors courts should consider when assessing a plaintiff's request to proceed anonymously); *Whistleblower 14106-10W v. Comm'r*, 137 T.C. No. 15, 2011 WL 6110061, at *5–14 (U.S. Tax Ct. Dec. 8, 2011) (listing and applying the same). "Pseudonymous litigation has been permitted only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Chao*, 578 F. Supp. 2d at 99 (internal quotation marks and citation omitted). As applicable here, the Tax Court recently noted that where *qui tam* plaintiffs have sought "to protect their identities on the basis of feared retaliatory harm[,] . . . [t]he results have been mixed." *Whistleblower 14106-10W*, 2011 WL 6110061 at *9 (footnote omitted) (collecting cases).

purpose of sealing a case is to protect the relator's identity." *Id.* Furthermore, the reasons Stokes seeks the seal—so that he can continue his investigation and because, "at this time," he fears retaliation in his industry (Stokes Decl. ¶¶ 20–22)—do not justify permanently protecting his identity from public disclosure. Upon consideration of the parties' positions and the comprehensive and persuasive application of the *Hubbard* factors to a similar but not identical request in *Durham*, the Court will continue the seal so as to protect Stokes's identity for a period of one year only. An order accompanies this memorandum opinion.

                                                           /s/
                                       ELLEN SEGAL HUVELLE
                                       United States District Judge

Date:   January 6, 2012